UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------------X

AYLIN GAUGHAN

                                            PLAINTIFF

                    -against-                                                                              DOCKET No.

STEPHEN G. BAROUNIS IN HIS PERSONAL AND PROFFESSIONAL                     COMPLAINT

CAPACITY TAX ID 956414;                                                                        JURY TRIAL
                                                                                                               DEMANDED
CITY OF NEW YORK;

KATHERINE VIERA, a/k/a KATHERINE VIERA OSPINA,

a/k/a KATHERINE VIERA OSINA, a/k/a KATHERINE BAROUNIS;

WGCZ, S.R.O., a foreign corporation, individually and d/b/a XVIDEOS.COM,

XVIDEOSDAILY.COM and

XVIDEOSTODAY.NET;

STEPHANE MICHAEL PACAUD, an individual;

MALORIE DEBORAH PACAUD, an individual;

Defendant John and Jane Does 1-50

                                            DEFENDANTS.

-------------------------------------------------------------------------------------X

        I am the Pro Se, Plaintiff in the above-entitled action and therefore fully familiar with the facts

and circumstances contained herein against:

Defendant, STEPHEN G. BAROUNIS (hereinafter "Defendant Barounis") in his personal and

professional capacity Defendant DETECTIVE STEPHEN BAROUNIS, Tax No. 956414,

employed as an officer, employee, agent of the New York City Police Department ("NYPD");

Defendant KATHERINE VIERA, a/k/a Katherine Viera Ospina, a/k/a Katherine Viera Osina, a/k/a

Katherine Barounis (hereinafter "Defendant Viera");

WCGZ, S.R.O. doing business as XVideos.com, XVideosDaily.com, XVideostoday.net

(hereinafter "Defendant XVideo");

1

STEPHANE MICHAEL PACAUD (an individual) (collectively and hereinafter "Defendant XVideo");

MALORIE DEBORA PACAUD (an individual) and (collectively and hereinafter, "Defendants XVideo"),

DEFENDANTS JOHN and JANE DOE 1-50 (hereinafter John Doe 1-50) and

all Defendants collectively hereinafter ("Defendants") alleges as follows:

## PRELIMINARY STATEMENT

This action arises out of Harassment, Revenge Porn, Cyberstalking, Cyberbullying, Unlawful Use of Likeness, Violation of Privacy/Intrusion and Invasion of Privacy, Discrimination, Retaliation, Numerous Violations of Civil Liberties, Violations of Federal Statutes 18 U.S.C. § §241, §242, §3631, §14141, Stolen Identity, Harassment, Slander, Libel, Defamation, Fraud and Intentional Infliction of Harm and Emotional Distress, Misappropriation, Stalking, Extortion and Blackmail, violations of Civil Rights Law and *Prima Facie* tort.

1. Defendant Viera and Defendant Barounis use the internet to cyberstalk, assault, exploit, harass, attempt to inflict physical harm and compromise Plaintiff's safety under what they perceived to be "the cloak of anonymity" and belief that they are "above the law" due to Defendant Barounis' employment as a New York City Police Department ("NYPD") detective while criminally impersonating Plaintiff on sex sites and hiding their trail of destruction and harm behind a deceased individual's identity.

2. Defendant Viera and Defendant Barounis selected XVideo as their platform of choice to effectuate their depraved goals.

3. Using the platform of XVideo to attempt to cause severe physical and emotional distress along with economic harm to Plaintiff, Defendant Viera and Defendant Barounis have engaged in a relentless campaign to destroy Plaintiff's reputation, finances and marriage by putting out false

narratives, pictures, falsely impersonating Plaintiff to solicit sexual favors and criminal impersonation.

JURISDICTION AND THE PARTIES

1.   At all relevant times, Plaintiff has been a resident of the State, City and County of New York.

2.   Plaintiff is an Asian Muslim, a protected class and lawful resident of the United States.

3.   Defendant Viera resides at:  9 Valleywood Court West Saint James, New York 11780.

4.   Defendant Barounis resides at: 9 Valleywood Court West Saint James, New York 11780.

5.   Defendant Barounis is and was at all times relevant herein, an officer, employee, and agent of the New York City Police Department and currently assigned to the Brooklyn South Warrants Division.

6.   At all times relevant herein, Defendant Barounis  was acting under color of state law in the course and scope of his duties and functions as an agent, servant, employee, and officer/detective of the New York City Police Department, and otherwise performed and engaged in conduct incidental to the performance of his lawful functions in the course of his duties. Detective Barounis was acting for and on behalf of the New York City Police Department at all times relevant herein, with the power and authority vested in him as an officer, agent and employee of the New York City Police Department and incidental to the lawful pursuit of his duties as an officer, employee, and agent of the New York City Police Department.

7.    Defendant City of New York is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The defendant City of New York assumes the risks incidental to the maintenance of a police abuse of power and the employment of police officers as said risks attach to the public consumers of the services provided by the New York City Police Department.

8.  Plaintiff in furtherance of her causes of action brought pursuant to New York State law filed a Notice of Claim with the CITY OF NEW YORK in or about April 16, 2024.

9.  More than thirty (30) days have elapsed since service of said Notice of Claim was filed and THE CITY OF NEW YORK has failed to pay or adjust the claim.

10.  Defendant Viera is in the United States unlawfully and Plaintiff  alleges that she and her possible cohorts (Gaudencio Viera, Karen Espinoza, Sandra Milla "John Does 1-50") are in fact legal residents of the country Peru.

11.  Upon information and belief, the corporate domicile of XVideo in the United States is: 4532 Saratoga Ave, Downers Grove, Illinois, 60515, United States

12.  The original jurisdiction  of this Court is invoked  pursuant  because the parties  have complete  diversity  of citizenship  and  the  amount  in controversy  exceeds $75,000.00.

13. This action falls within one or more of the exceptions as set forth in CPLR Section 1602, involving intentional actions, as well as the defendant, and/or defendants, having acted in reckless disregard for the safety of others, as well as having performed intentional acts.

14. Plaintiff has sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

15. This Court  has personal  jurisdiction  over Defendants  in  that, among  other  things: (a) Defendants are engaged in tortious conduct within the Commonwealth of New York and in this District, including by using Plaintiffs image without her authorization and (b) Defendants' conduct causes injury to Plaintiff within the Commonwealth of New York.

16. Defendants Viera and Barounis  are residents of Suffolk  County, State of New York, who committed tortious acts within the State of New York.

17.  Venue is proper pursuant to 28 U.S.C. § 1391 (b) because a substantial part of the events or omissions giving rise to this action occurred here.

18. This Court has jurisdiction over this action because the amount of damages Plaintiff seeks exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

19. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because there is a diversity of citizenship amongst the parties and this action involves an amount in controversy that exceeds $75,000.00, excluding interests and costs.

20. Venue is proper in the Southern District of New York pursuant to CPLR 503(a) because Plaintiff resides in New York County and/or a substantial part of the events giving rise to the claim occurred in New York County.

21. Moreover, this court has personal jurisdiction over the Defendant XVideo. because it engaged in business activities in and directed to this district/county and have committed tortious acts within this district or directed at this district.

22. Defendant WGCZ, S.R.O. ("WGCZ" or "Defendant") is a corporation, organized and existing under the laws of the Czech Republic with its principal office in Downers Grove, Illinois and perhaps elsewhere.

23. Defendant, WCGZ, S.R.O., upon information and belief, is a limited liability company existing under the laws of the Czech Republic and having a place of business at Praha 1 - Nove Mesto, Krakovska 1366/25, PSC 110 00 Czech Republic.

24. Defendant, WCGZ S.R.O., owns and operates "XVideo.com," a popular adult-oriented website featuring pornographic materials.

25. Defendant Stephane Michael Pacaud is, upon information and belief, is resident of France, and an executive of WGCZ, S.R.O. acting within the United States and seeking protection of the laws of the United States.

26. Defendant Malorie Deborah Pacaud is, upon information and belief, is a resident of France, and an executive of WGCZ, S.R.O. acting within the United States and seeking protection of the laws of the United States.

27. Defendants Stephane Michael Pacaud and Malorie Deborah Pacaud are each executives of Defendant WGCZ, S.R.O., with discretion, influence, and control over the contents of Xvideos.com, Xvideosdaily.com, and Xvideostoday.net.

28. Defendants Does 1-50 are individuals or entities that own *Xvideos.com*, *Xvideosdaily.com*, and/or *Xvideostoday.net* and/or act in concert with *Xvideos.com*, *Xvideosdaily.com*, and/or *Xvideostoday.net*, along with Defendant Barounis and Defendant Viera. The true names and capacities of which are presently unknown to Plaintiff.  It is for that reason Plaintiff sues these Defendants by fictitious names. Plaintiff avers that each of the Doe defendants, along with the named defendants, jointly or severally, is responsible for the damages alleged herein.

29. Defendants Does 1 through 50 are the owners and operators of other websites and/or media outlets. Plaintiff is unaware of the true names or capacities of Does 1 through 50. Plaintiff is informed and believes, and on that basis avers, that Does I through 50 either (a) directly performed the acts alleged  herein, (b) were acting as the agents, principals, alter egos, employees,  or representatives of the other Defendants, and/or (c) otherwise participated  in the acts alleged herein with the other Defendants. Accordingly,  Defendants Does 1 through 50 each are liable for all of the acts alleged herein because they were the cause in fact and proximate cause of all injuries suffered by Plaintiff as alleged herein. Plaintiff will amend the Complaint to state the true names of Defendants Does 1 through 50 when their identities are discovered.

## FACTS

30. Plaintiff lives with a cancer diagnosis and autoimmune disease and therefore does not make the following statement lightly.

31. Defendant Viera and Defendant Barounis are the criminal masterminds behind all of this pain and harm and nothing short of  a cancer unto society/the public acting as malignant tumor spreading their filthy disease, mutating and growing more emboldened with their manipulations and lies.

32. Plaintiff met Defendant Viera in or about October 2017.

33. Plaintiff has known of and known Defendant Barounis for at least two decades and married to his father.

34. Defendant Viera was dating Plaintiff's now stepson, Defendant Barounis (Plaintiff is loathe and reluctant to use the term "stepson" as she has no relationship with him in part due to the allegations and details described herein.  However, for purposes of this action and to put things into context, Plaintiff will name his as "Defendant Barounis").

35. Defendant Viera initially presented to the family as ambitious, but as time went by Plaintiff learned that the only thing Defendant Viera was ambitious about is not working and stirring up strife, chaos and dysfunction presumably because she has too much time on her hands.

36. Defendant Viera moved into Plaintiff's husband's home in the summer of 2018 with four cats.

37. Defendant Viera immediately upon moving in, began to show "red flags", such as demanding high end luxury items from Plaintiff's husband for her birthday (which somehow Defendant Barounis and Defendant Viera thought was an acceptable and appropriate demand given that she was living at the residence for free and all of her needs and bills were paid for by others).

38. Plaintiff's husband was paying for Defendant Viera's cell phone bill, food, emergency cat surgeries and purchasing high end luxury gifts for Defendant Viera and her family. At times, Defendant Viera would without permission purchase items for her family on the credit cards of others. Again, all of which Defendant Barounis thought all this was acceptable behavior and someone else's financial responsibility other than his.

39. Defendant Viera does not work, pay rent nor contribute financially to the residence in which Defendant Barounis and Defendant Viera reside, which is the  home of Plaintiff's husband.

40. In fact, Defendant Viera, initially presented herself to the family as ambitious but the only thing that she appears ambitious about is her torturous interference in family dynamics with salacious lies,  not working/being employed, getting others to support her financially/pay her bills, have others take

responsibility for her and sleeping all day until such time, her now spouse (Defendant Barounis), a civil
servant, comes home from work.

41. Recently, prior to her death in January 2024, Plaintiff's mother-in-law, accused Defendant Viera
of stealing hundreds of dollars from her purse during her visit with them.

42. At Thanksgiving 2019, Defendant Barounis cornered Plaintiff, pretended to lunge at her, laughed
and pointed to his service weapon.  All of this was unprovoked as Plaintiff was coming out of the
bathroom and found Defendant Barounis was waiting for her.

43. Shaking, Plaintiff sat at the table trying to pretend that nothing was wrong when Defendant
Barounis, learning of the food that Plaintiff had brought, threw the food across the Thanksgiving table
and announced that he wouldn't eat anything that Plaintiff had prepared, despite no one asking him to
consume anything that Plaintiff made.

44. From that point forward, Plaintiff refused to be in the same room alone at Defendant Barounis and
as stories of his hostile, angry outbursts and volatility were supported by other members of the family,
who have recounted their own distress and horror of Defendant Barounis' anger issues.

45. Subsequently, presumably because Plaintiff refused to be in their presence alone and vulnerable,
Defendant Barounis and Defendant Viera orchestrated a campaign to make Plaintiff sexually exploited,
branded as "whore" uncomfortable, ostracized and isolated and put in harm's way.

### DEFENDANT VIERA and DEFENDANT VIERA'S HISTORY AND FRAUD AND INTERFERENCE

46. Plaintiff repeats, re-alleges, and incorporates by reference each and every preceding allegation set
forth herein.

47. In May 2019, Defendant Viera and Defendant Barounis, a civil servant, entered into a sham marriage
for the purpose of providing benefits (i.e. health insurance for IVF treatments) to Defendant Viera (at the
tax-payers expense), and upon information and belief, to allow for Defendant Viera to apply for United

States citizenship[1] and to bolster her application for citizenship by having a child born in the United States.

48. Upon information and belief, Defendant Viera was married prior from 2013-2018 and there are no divorce records in the state of New York. Therefore, Plaintiff respectfully submits that Defendant Viera and Defendant Barounis' fraud continues in many ways and forms detailed in the accompanying paragraphs.

49. To date, Defendant Viera has worked only a few short months in six years.

50. Via a TLO ("The Last One" background report), Plaintiff later learned that Defendant Viera is using a counterfeit/stolen social security number to obtain benefits via Defendant Barounis' employment with the New York City Police Department.

51. Defendant Viera is always the source of dissemination of gossip, animus and discord in family dynamics and for some unknown reason has always targeted Plaintiff going so far as to go above and beyond to discredit and make up falsehoods Plaintiff, while accepting Plaintiff's generosity.

52. By contrast, when Defendant Viera was lamenting that she needed Botox and that Defendant Barounis was having an affair with a female officer, Plaintiff kept this information to herself.

53. Recently in September 2023, after being confronted about an unlawful porn profile of Plaintiff and threatening texts, Defendant Viera, put on an award winning to Plaintiff's husband when she made bold declarations of perpetrating salacious and untrue comments about Plaintiff not being faithful because she claimed that she thought that Plaintiff's husband "could do better than Plaintiff" and that she thought that the family should know. She also claimed that for the last several years, she thought that Plaintiff's husband, her father-in law, "hated" her. In short, Defendant Viera is a phenomenal actress and master manipulator, who can convincingly tell boldfaced lies.

54. Yet, not once in several years did Defendant Viera approach her father-in-law (Plaintiff's husband)

---

[1] Immigration fraud is generally grouped into two types—immigration-related "document fraud" and immigration "benefit fraud" ("benefit fraud" involves misrepresentation of a material fact to qualify for a specific immigration status or benefit) -source EveryCRSReport.com

and ask whether there was strife between the two of them. Instead, she continued to accept financial support, "stir the pot" and make outrageous and boldfaced disingenuous claims to make him feel unsafe and unwelcome in her presence despite living in his house.

55. When Plaintiff and her husband married, due to Defendant Viera's malicious intent and ongoing torturous interference with emboldened lies, Plaintiff's stepdaughter called Plaintiff "an evil ███ing slut", despite Plaintiff spending hours listening to her incessant whining about numerous failed relationships, family dynamics and helping her through medical and legal matters.

56. No matter how much Plaintiff tried to ignore and look the other way with Defendant Viera's escalating lies and interference, they only served to embolden her efforts to cause Plaintiff harm.

57. In January 2021, Plaintiff's husband moved out of the home at 9 Valleywood Court West, Saint James, New York and he and Plaintiff moved into a one-bedroom apartment after their marriage in November 2020.

58. Plaintiff's husband in order to keep the peace and to help lay a foundation for a future for his son, allowed Defendant Viera and Defendant Barounis to continue to inhabit the home at 9 Valleywood Court West, Saint James, New York with little to no financial contributions.   A large home on two acres with several bedrooms and a pool, which Defendant Viera's family enjoys, and all of her financial responsibilities are taken care of because she refuses to work, despite previously being employed as a hairdresser with the ability to make her own hours.

59. By contrast, Plaintiff's husband (the owner of the house) was made to feel unwelcome and went there sporadically to pick up his mail.

60. Defendant Viera and Defendant Barounis at this time bore a child utilizing IVF techniques and his health benefits with the New York City Police Department, upon information and belief, utilizing Defendant Viera's stolen/counterfeit social security number to bolster her application for citizenship.

61. Plaintiff's husband was dismayed to find Defendant Viera day in, day out sleeping with their alleged child and began to suggest that she get a job, which upon information and belief, made

Defendant Viera even more vindictive towards Plaintiff and her husband.

62.  In or about April or May 2022, Defendant Viera accused Plaintiff's husband of walking into his own home unannounced while she was walking around naked in the early afternoon.

63.  Plaintiff's husband adamantly and vehemently denied the accusation and wrongdoing.

64. Upon information and belief, due to Defendant Viera's vindictive and materialistic nature, her objective was to claim the expensive home, in an exclusive neighborhood as her own in an effort to further her narcissistic,  material persona for pecuniary gain, despite no contributions whatsoever.

65.  Upon information and belief, Defendant Viera was being disingenuous as her objective was to keep Plaintiff's husband from his own home and from learning of her possible extracurricular activities, sleeping all day and penchant for frequenting porn sites because she is home all day.

66.  Plaintiff's husband recognized such behavior from a prior marriage and began to strongly suggest that Defendant Viera get a job to keep her out of trouble and not cause pain and suffering for Defendant Barounis.

67. Defendant Viera's actions of walking around naked and frequenting porn sites are egregious, incestuous, disturbing and violate the bounds of decency as there is the possibility of a young, impressionable, vulnerable toddler/child being exposed to adult content/situations, which endangers the welfare of the child.

68.  Plaintiff began to receive numerous texts and calls suddenly asking whether she was in XVideo prior, but Plaintiff's husband told her that someone was "phishing" for personal information and directed Plaintiff to delete the texts.

69.  Plaintiff did not even know of the existence of sites such as XVideo until such time on September 11, 2023, she received a text soliciting sexual favors, with pictures of male genitalia and a very detailed description of the type of sex that Plaintiff allegedly enjoyed (most of which shocked Plaintiff) according to the unlawful profile.

70.  The description of Plaintiff's alleged sexual proclivities and Plaintiff's husband's sexual prowess

is also abhorrent and disgusting, and Plaintiff and her husband wondered how and why his son (Defendant Barounis) and his wife (Defendant Viera) would ever do such a thing when all of his life he worked several jobs to give them the best possible life for which they enjoy immensely. Particularly, Defendant Viera who does not work nor contribute financially.

71. Clearly, there is some deep rooted pathological, unhealthy mental disturbance of an incestuous and vile nature for Defendant Viera and Defendant Barounis to post such vile lies about Plaintiff and her husband (their father).

72. Defendant Viera seems to be unusually incestuously obsessed with Plaintiff's husbands' genitalia and sexual prowess given her prior accusations and the XVideo profile posting.

73. To add to further harm, Defendant Barounis is an NYPD third grade detective whose job it is to "protect" people, not inflict harm and the fact that he continues to "look the other way" and dismiss Defendant Viera's disgusting false accusations is disturbing as they are raising an impressionable child whom they might be psychologically harming with his silence and encouragement of Defendant Viera's lies and actions.

74. The harm and damages to Plaintiff and her husband can never reversed.

75. Additionally, Defendant Viera and Defendant Barounis believe that they are "above the law" due to Defendant Barounis' employment with the New York City Police Department.

76. Defendant Barounis has been the subject of at least two lawsuits due to his fractured belief system that he is above the law and the lawsuits echo descriptions of abuse.

77. Upon information and belief, Defendant's Viera and Defendant Barounis were under the misguided belief that Plaintiff's husband should continue to reside with them and support them financially and they were threatened by Plaintiff's presence, despite Plaintiff attempts at civility to keep the peace.

78. Plaintiff has been villainized for marrying Defendant Barounis' father and the loss of financial support of a cringeworthy situation where they all lived together, which didn't allow Defendant Barounis and Defendant Viera to grow up, be self-supporting and pay their own way despite the

financial cushion of a residing in a mortgage free home in an upscale neighborhood along with substantial inheritance and benefits received.

79. Yet, despite Defendant Barounis and Defendant Viera's entire life being "handed to them" without provocation or cause they felt a need to deprive Plaintiff of nuance and humanity and in a humiliating and defamatory actions decided to thrust Plaintiff into the "porn world" via their postings on XVideo pretending to be Plaintiff with upon information and belief, their own deprived and vulgar sexual proclivities.

80. Plaintiff mistakenly thought that by the end of 2023 having had no contact with Defendant Viera or Defendant Barounis for years that they had all come to a truce where they accepted that they had to co-exist by pretending that the other did not exist.

81. Plaintiff's silence and wishing them well from a distance was misinterpreted for weakness.

82. Unfortunately, Plaintiff couldn't be more wrong about the perceived truce as the escalation of Defendant Barounis and Defendant Viera's criminal activities were just beginning.

### AGGRAVATED HARASSMENT AND STOLEN IDENTITY, REVENGE PORN, CYBERSTALKING, CYBER BULLYING, UNLAWFUL USE OF LIKENESS, VIOLATION OF PRIVACY, SLANDER/LIBEL/DEFAMATION

83. Plaintiff repeats, re-alleges, and incorporates by reference each and every preceding allegation set forth herein.

84. On November 26, 2022, Plaintiff received a text calling her a "whore" and to stay away from "my man", which are the very same words, defamatory comments and statements that Defendant Viera used in the past to slander Plaintiff.

85. Plaintiff's husband told her to ignore the text and that it was probably meant for someone else but Plaintiff had her suspicions.

86. Over a span of ten (10) months, Plaintiff and her husband began to get strange calls and texts at all hours, which led to arguments between her and her husband, but again, Plaintiff's husband told her to ignore the texts.

87. On July 7, 2023, Plaintiff's husband received the following text: "Listen I'm so sick and tired of telling your whore wife to leave my husband ALONE. My husband is no saint and I know what he's done I'm not blaming everything on her. She's the one that keeps looking for him. Texting him calling him. I'm sure it's when you guys have a fight, which  was the case with my husband. I'm telling YOU this now, if I see another text from her. I WILL ██████ING GET HER DONT CARE SHES LEAVING NOW ON LONG ISLAND I WILL GET HER WE HAVE FRIENDS IN COMMON I WILL GET HER LOW LIFE WHORE STOP TEXTING MY HUSBAND STOP SCAMMING PEOPLE PAY YOUR OWN BILLS AND STOP ██████ING WITH MARRIED MEN I'd be careful with her when she tells you she has " costumers" pretending to be "witch" this cunt is meeting with married men I've found out since December 2 years ago".

88. Clearly, the writer of the aforementioned hatred filled venomous threatening text had some intimate knowledge of Plaintiff and her husband's life, which Plaintiff believes upon information and belief is Defendant Viera.

89. Additionally, there were other texts sent to Plaintiff and her spouse, calling Plaintiff a "whore" and branding her a "liar" and "adulteress", albeit with numerous misspellings and terrible grammar.

90.   Upon information and belief, Defendant Viera suspected Defendant Barounis of adultery again and in her displaced anger, jealousy and coupled with being bored day in day out decided to interfere and destroy Plaintiff's marriage and both professional and personal life.

91.   Upon information and belief, the electronic devices (i.e. iphone, laptop) that Defendant Viera utilizes as her "weapons of mass destruction" are owned and paid for by Defendant Barounis and upon information and belief, with his permission, acting as Defendant Viera's co-conspirator, they enacted a plan to harass and harm Plaintiff.

92. Defendants' actions with respect to Plaintiff's image have caused serious, permanent and irreparable harm to Plaintiff's reputation.

93.  Plaintiff was sitting next to her husband when the text came through to him and told her husband

14

that the text was coming from Defendant Viera and joked that some English and grammar lessons were very much needed.

94.  Plaintiff's husband, for the love of his son, Defendant Barounis decided not to confront them but third-party texts  with the terrible grammar and spelling continued along with the threats to Plaintiff's life.

95.  Defendant Viera and Defendant Barounis' alleged third party texts to Plaintiff and her husband is rather hypocritical as all of Defendant Viera's bills and financial support comes from the Barounis family.

96.  Hypocritically, Defendant Viera's favorite pastime when she is not on porn sites pretending to be Plaintiff is spending the Barounis monies or asking for expensive gifts on behalf of herself and her family.  Additionally, her family, who is in the Unites States illegally and unlawfully have defaulted on mortgages obtained with upon information and belief, stolen/counterfeit social security numbers and defaulted on government debt and receiving support from entitlement programs under false presentences.

97.  Plaintiff enlisted the help of an investigator friend of hers and she was told that in all likelihood these texts came through a third-party app, where one can even pretend to be the White House calling or spoof any number and as such not traceable via ordinary means and measures.

98.  Plaintiff's husband also sought advice and direction from law enforcement friends and private investigators and was told the same.

99.  Defendant Barounis and Defendant Viera's actions with respect to Plaintiff's image and private information have caused serious, permanent and irreparable harm to Plaintiff's reputation and are nothing short of hate crimes.

100. Plaintiff again asked her husband whether he was going to confront Defendant Viera and his son and Defendant stated that it was not his intention to put any stress on his son's (Defendant Barounis) marriage.

101. Defendant Barounis and Defendant Viera for ten months had fraudulently and criminally impersonating Plaintiff on the XVideo site and Plaintiff was concerned about what information and agreements they entered into on private chats on the XVideo site soliciting sexual favors.

102. Plaintiff seeks compensatory damages to redress Defendants' wrongful use of Plaintiff's image and personal and private information.

103. In hindsight, Plaintiff now realizes that Defendants Viera and Barounis had created the unlawful XVideo's profile of Plaintiff and through the grapevine of family dynamics realized that their criminal activities with the intent to harm Plaintiff and/or place her in physical harm and danger had not gained traction and decided instead to target Plaintiff's husband knowing that he had a jealous streak in an effort to further their harm.

104. Upon information and belief, Defendant Barounis and Defendant Viera presumably enraged at Plaintiff's husband for no longer financially supporting them knew that the unlawful upload and dissemination of Plaintiff's information would not only cause trouble in Plaintiff's marriage but would also be deeply painful, humiliating and damaging to her person life and career for the world to see and embarked upon stealing Plaintiff's identity and criminally impersonating both Plaintiff and a Judy Ghany Barounis (a deceased individual) in their smear campaign against Plaintiff.

105. For approximately ten months Plaintiff kept receiving odd calls and texts, such as the one on August 13, 2023, asking whether she was on XVideo and asking for sexually explicit images and favors, which would instill dread and fear.  Some of the texts, which upon information and belief, were from Defendant Viera's long time paramour with the encouragement of Defendant Viera.

106. Plaintiff's husband actually called some of the numbers and the persons denied contacting Plaintiff.

107. On Monday, September 11, 2023, Plaintiff received a text with a screenshot of a profile in her likeness titled "Ilovetos███████snyc" along with a graphically detailed description of sexual acts and pictures of male genitalia.

108. Plaintiff asked a client, who is experienced in pornographic sites if this was a real site and sent to

him the screenshot of the profile, which he unfortunately confirmed was real and that her personal information was indeed listed.

109. Plaintiff almost fainted with both rage and fear.   All of a sudden the last year of strange texts and calls made sense.

110. Upon receipt of the screenshot with the unlawful use of Plaintiff's likeness, graphic commentary and personal information, Plaintiff called her husband at work.

111. Plaintiff's husband apparently called his son (Defendant Barounis), who in true form denied that the origins of such harmful actions including but not limited to: Harassment, Revenge Porn, Cyberstalking, Cyberbullying, Unlawful Use of Likeness, Violation of privacy, Stolen Identity, Harassment, Slander, Libel, Defamation, Fraud and Intentional Infliction of Harm stemmed from the two of them (Defendant Viera and Defendant Barounis).

112. In a shocking display of audacity, disrespect and toxic narcissism, Defendant Viera called Plaintiff's husband (her father-in-law whose home she lives for free) and yelled at him that she doesn't have time for Plaintiff's accusations and that she was very busy these days (presumably doing nothing).

113. The unlawful lewd and lascivious profile was created on November 22, 2022, and the first harassing text message calling Plaintiff a whore and accusing her of adultery was sent to Plaintiff on November 26, 2022, four days later.  This was not a coincidence.

114. Additionally, the screenshots of the unlawful profile evidenced that whoever had created the unlawful revenge porn style profile of Plaintiff's stolen identity had logged onto the site 22 days prior to September 11, 2023.  Each log in should constitute its own individual crime/separate offense.

115. Upon information and belief Defendant Viera and Defendant Barounis acted collectively in their attempts to injure Plaintiff, physically, emotionally, monetarily and to torturously interfere in her marriage.

116. There was and is a malicious motive underlying the act of publishing the vulgar and harmful content.

117. Defendant Viera and Defendant Barounis' actions were undertaken specifically to bring harm to Plaintiff and to humiliate and terrorize Plaintiff and to date they continue with drive byes and parking by Plaintiff's residence in acts of terrorism and to intimidate.

118. Defendant Viera and Defendant Barounis' actions have compelled Plaintiff to file criminal charges and to force Plaintiff to devote several hours each day to scour the internet for unlawful images and videos and to require Plaintiff regularly to defend herself in her marriage and to regularly deal with harassing strangers who contact Plaintiff after seeing the unlawful and fraudulent uploads and unlawful dissemination of her personal information.

119. Once Plaintiff locates the content then Plaintiff was forced to communicate with the website and enlist others to effectuate the removal, a process which can take days and weeks.

120. Undeterred by Defendant Viera and Defendant Barounis' onslaught of harassment, untruths, salacious and defamatory postings, along with their history of arrogant retaliation with more lies Plaintiff brings this action seeking compensatory and punitive damages for the Defendants gross wrongdoing and immense harm to Plaintiff.

121. Plaintiff alleges that Defendants Viera and Defendant Barounis acted with malice, oppression and/or fraud.

122. Defendants' actions are the direct and proximate cause of Plaintiff's harm.

**INTENTIONAL INFLICTION OF HARM AND DISTRESS**

123. Plaintiff repeats, re-alleges, and incorporates by reference each and every preceding allegation set forth herein.

124. Plaintiff lives with a cancer diagnosis and autoimmune disease.

125. Plaintiff's husband, a 9/11 first responder has been violently ill since 2022. Some symptoms include: hiccups lasting twenty (20) months, diarrhoea, vomiting and depression for which the causes remain unknown despite a battery of tests.

126. Plaintiff's initially through diligent research diagnosed his bacterial gut infection several months

before his physicians.

127. Plaintiff's husband was put on long-term antibiotics and mood stabilizers and for a brief period things seemed better, despite certain medications almost rendering Plaintiff's husband immobile.

128. Plaintiff's husband, after receipt of another heinous text message on July 7, 2023, threatening Plaintiff and accusing her of unspeakable things, Plaintiff's husband's hiccups began again as did the vomiting and inability to keep food down.

129. Plaintiff began researching various ailments that fit the description of his ailments along with suggesting possible cures. Plaintiff sent several letters to Plaintiff's doctor with her facts and findings.

130. Every single phone call from Plaintiff's husband's doctors begin with "We have received your wife's letters and research…."

131. At the end of August 2023, Plaintiff accompanied her husband to an endoscopy in which Plaintiff gave his doctor her latest research.

132. Immediately after the endoscopy, the physician called Plaintiff directly and stated he didn't see anything in the endoscopy and that he believed the cause of Plaintiff's husband's ailments was stress induced and inquired as to whether there was stress in his life (which was an understatement to be exact).

133. Plaintiff's husband, a retired NYPD sergeant who never complains had told his doctor that he didn't think that he was feeling undue stress.

134. Plaintiff contradicted her husband's statements and told the doctor that there was a lot of stress stemming from various family dynamics from his mother being the target of elder abuse to the strained relationships with his adult children and Defendant Viera with both him and Plaintiff.

135. Plaintiff told her husband's doctor that her husband was depressed and stressed because Defendant Viera had perpetrated some lies about both he and Plaintiff and that it made him very sad because his adult children were now estranged (for whom he had given everything and for which his son and Defendant Viera had not accomplished anything on their own, from his job, the home in which they reside, to their child born from IVF treatments) had chosen to believe the malicious lies perpetuated by

Defendant Viera (who has benefitted the most from his generosity, yet continues to further family dysfunction and animus through her words and actions).

136. Plaintiff's husband was put on anti-depressants and for a few days, the symptoms subsided until such time on September 11, 2023, Plaintiff received a text with male genitalia and learned of her unlawful stolen identity on the XVideo's site with her personal information for all to see. To date Plaintiff's husband's symptoms and hiccups continue.

137. Plaintiff's husband underwent a manometry test on Thursday, September 14, 2023, and while the results yielded a small hernia in his oesophagus, the doctor still concluded that the small hernia is not the reason for the hiccups and constant vomiting and that it is stress induced.

138. For weeks, Plaintiff attempted to have XVideo remove the unlawful profile of her to no avail.

139. Plaintiff sent a takedown notice and even communicated with a Courtney Palma, a live video cam affiliate/subsidiary of XVideo, who indicated that they could not help.

140. In fact, all attempts of a takedown notice to XVideo and its affiliates and subsidiaries failed.

141. Having had enough of the ongoing harassing and threatening texts/calls of the sexual exploitation and the intentional defamatory character assassination to harm Plaintiff, on September 15, 2023, Plaintiff and her husband together went to the NYPD 24th precinct and filed a formal complaint after Plaintiff's receipt of the September 11, 2023, text.

142. On September 18, 2023, Plaintiff received a call from a lovely woman at Safe Horizons (a victim advocacy group), whereby they spoke at length as to how Plaintiff was the situation as she processed the emotions including but not limited to anger, shame, humiliation, nightmares, crying, victimized, helpless, inability to sleep, anxiety, etc. and what resources Plaintiff had to help her get through this situation.

143. Plaintiff explained that her faith was all that she had at the moment because with her husband being violently sick and how the stress was manifesting in physical medical ailments, she didn't even have the luxury of being allowed to truly feel her feelings because her husband's health was the priority at the

moment.

144. Plaintiff further explained that not only did she feel shame and humiliation at the alleged actions of Defendant Viera and Defendant Barounis but despite being the direct target and victim, Plaintiff's husband was also the victim of Defendant Barounis and Defendant Viera, notwithstanding the fact that Defendant Viera lives in the home of Plaintiff's husband rent free. A home that he worked three jobs to be able to afford and that his generosity had extended to Defendant Viera's family, and he was obsessing, depressed and unable to sleep filled with anxiety as to why they would want to hurt him with their alleged actions.

145. The unlawful XVideo profile of Plaintiff also contained allegations of Plaintiff's husband's genitalia, which is both disgusting and incestuous given the source (Defendant Viera and Defendant Barounis) of the information uploaded. Plaintiff will not even address the perverted psychology of these acts for which Defendant Barounis and Defendant Viera have no remorse or shame.

146. Revenge porn or nonconsensual pornography is often a tool of domestic abusers. Plaintiff and her husband are the targets of Defendants Viera and Defendant Barounis' domestic abuse, which is both senseless along with their senseless disregard of the harm and danger they were inflicting.

147. Defendant Barounis and Defendant Viera intended to cause severe emotional distress and recklessly disregard Plaintiff's emotional and physical well-being and that such conduct would cause severe emotional distress. Such outrageous conduct and behavior is beyond the limits of decency and is not tolerable in a civilized society.

148. Recently in or about May 5, 2024, Plaintiff rushed her husband to the hospital because he was vomiting blood, whereby she stayed by his side as the emergency room physicians kept him overnight.

149. Plaintiff's husband acknowledged the undue stress and trauma that he was having a difficult time reconciling with at the actions of Defendant Barounis and Defendant Viera.

150. Plaintiff in turn admitted that she was traumatized herself but again her husband's declining physical health took precedence.

151. As a direct and proximate result of Defendant Barounis and Defendant Viera's conduct and behavior, Plaintiff suffered emotional distress.

152. Defendant Barounis and Defendant Viera acted with the intent to cause severe emotional distress, and/or disregarded the substantial probability that their actions would cause severe emotional distress.

153. The acts of Defendant Barounis and Defendant Viera were so egregious and done with malice and reckless disregard/indifference in the fact of perceived risk that their actions would harm Plaintiff's reputation, physical and emotional well-being, that in addition to all the damages inflicted upon Plaintiff along with the measure of relief to which Plaintiff may be entitled to herein, Defendant Barounis and Defendant Viera should also be required to pay punitive damages for their reckless misconduct in the further amount greater than the jurisdictional limit of all lower courts to be determined by a trier of fact in order to deter them and others similarly situated from engaging in such conduct in the future.

154. Plaintiff demands judgment against Defendant Barounis and Defendant Viera in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as to punish Defendant Barounis and Defendant Viera for their willful, wanton, reckless and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with interest, legal fees, costs and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

### DEFENDANT VIERA AND DEFENDANT BAROUNIS LIE TO THE POLICE AND THE FBI and FURTHER STATEMENT OF FACTS TO ALL CAUSE OF ACTION

121. Plaintiff repeats, re-alleges, and incorporates by reference each and every preceding allegation set forth herein.

122. Defendant Barounis, who is no stranger to lies, who lied to a grand jury in the lawsuit *Danari Aiken v. City of New York 18 cv 06078* and also a defendant to a recently filed lawsuit with similar allegations entitled *Nathaniel Bostic v. City of New York* 525616/2023 in New York Supreme Court, Kings County.

123. Prior to his transfer to Brooklyn South Warrants, Defendant Barounis had "issues" with his

commanding officers at his prior assignment in Kings County and instead of learning the life lessons of dealing with difficult managers/superiors as almost every person has, favours were called in as a "legacy" of the NYPD and he was transferred to his current command.

124.  A public search of Defendant Barounis' employment records evidence that the Kings County District Attorney's office deemed him "not credible" and unfit to give testimony.

125.   After spending four (4) stressful days and losing pay trying to get Defendant XVideo's to take down the unlawful profile without success, Plaintiff and her husband had no other options but to involve law enforcement due to the physical, emotional and financial harm that Plaintiff was in every day the profile remained on the site.

126.  Fearing for her safety, on Friday, September 15, 2023, Plaintiff and her husband filed an NYPD police report/criminal at the 24th precinct in Manhattan.

127.  Plaintiff gave a detailed description of why she believed the perpetrator were Defendant Viera and Defendant Barounis as the linguistic skills are very telling along with the content.

128.  One of the details Plaintiff told the detective overseeing the NYPD investigation is that the writing style of the texts that Plaintiff and her husband received are the very same style, language and misspellings in the unlawful porn profile with Plaintiff's stolen identity.

129.  Plaintiff asked that subpoenas be served upon Defendants XVideo's because Plaintiff's husband stated that there must be a "breadcrumb" trail of technology of these heinous actions and irreparable harm to both Plaintiff and her husband.

130.  On September 20, 2023, Plaintiff was contacted by the Federal Bureau of Investigations ("FBI") and gave a detailed account as to why she believed that Defendant Viera and Defendant Barounis acted with malice, oppression and/or fraud.

131.  In or about October or November 2023, Plaintiff was contacted by the NYPD and learned that an iphone was used to send texts to Plaintiff and her husband along with the uploading the unlawful profile of Plaintiff on the XVideo site.

132.   In or about December 2023, the FBI went to the residence of Defendant Viera and Defendant Barounis to ask questions whereby they denied wrongdoing.

133.   On February 14, 2024, the NYPD again contacted Plaintiff after learning via subpoenas sent to XVideo that the origin/source/ip address of the unlawful uploads of Plaintiff was from the wifi house at 9 Valleywood Court West Saint James, NY 11780, whereby Defendant Viera and Defendant Barounis reside and were using wifi in the name of a deceased individual, Judy Ghany Barounis to hide their tracks, transferred the investigation to the Suffolk County Police Department, whereby Plaintiff filed another complaint and an investigation ensued.

134.   Defendant Barounis and Defendant Viera are the only two adults that reside at 9 Valleywood Court West, Saint James, New York and the sexualization of Plaintiff's image and use for prurient and illicit purposes is abhorrent and disgusting.

135.   Additionally, Defendant Viera utilizes an iphone held in the name and account of Defendant Barounis.

136.   Defendant Barounis and Defendant Viera's actions with respect to Plaintiff's image have caused serious, permanent and irreparable harm to Plaintiff's reputation.

137.   In or about March 2024, Plaintiff received a communication from the NYPD internal affairs department regarding Defendant Barounis and subsequently met with them.

138.   On May 1, 2024, Plaintiff learned from the Suffolk County Police Department that all phones, laptops, computers were in the name of Defendant Barounis, some of which, upon information were used in the criminal actions/natures that Plaintiff has described and detailed in this complaint herein.

42 U.S.C VIOLATIONS

139.   Plaintiff repeats, re-alleges, and incorporates by reference each and every preceding allegation set forth herein.

140.   Section 3631 of 42 U.S.C. imposes criminal penalties upon whoever by force or threats of force

willfully injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because of his race, color religion, sex, handicap, familial status or national origin because he has engaged in designated transactions involving dwellings or participating in any of the activities, services, organizations or facilities or dwellings.

141.  Defendants Viera and Defendant Barounis on the porn site XVideo disseminated Plaintiff's personal information and location to bring physical, emotional and financial harm to Plaintiff.

142.  Plaintiff was forced to leave her dwelling, not go anywhere alone, change her locks and change all addresses associated with the unlawful profile.

143.  As such, Plaintiff's harm was the direct and proximate cause of these actions.

MORE CRIMES BY DEFENDANT VIERA AND DEFENDANT BAROUNIS, THEIR<br>HYPOCRISY AND CRIMINALLY IMPERSONATING A DECEASED INDIVIDUAL

144.  Plaintiff repeats, re-alleges, and incorporates by reference each and every preceding allegation set forth herein.

145.  On February 14, 2024, Plaintiff received a call from the NYPD and learned that via subpoenas served upon Defendants XVideo, that the wifi used to upload Plaintiff's unlawful information onto XVideo to unlawfully solicit sexually favors by pretending to be Plaintiff by whom Plaintiff alleges is Defendant Viera and Defendant Barounis was held in the name of Judy Ghany Barounis, an individual was died in 2016 and who was the one of owners of the mortgage free home that Defendant Barounis and Defendant Viera  currently reside.

146.  In an effort to "cover" their illegal objectives, identity theft, criminal impersonation and fraud, additionally, Defendant Viera and Defendant Barounis are allegedly also impersonating a deceased individual.  The decedent's name is Judy Ghany Barounis.  Plaintiff believes that Defendant Viera and Defendant Barounis intentionally kept the wifi account (along with other accounts) in the name of the decedent (Judy Ghany Barounis) to hide their deceit/illegal objectives to avoid and escape both accountability and detectability.  Therefore, they are not only stealing Plaintiff's identity, but additionally using they are also using the identity of the decedent to try to "hide their tracks".

147.  Plaintiff's husband finally confronted Defendant Viera and Defendant Barounis and was met with numerous deflections such as allegations of adultery. Plaintiff's husband was married to the decedent, Judy Ghany Barounis prior to her unfortunate and untimely death in 2016.

148.  Defendant Viera and Defendant Barounis' hypocrisy is outstanding as they reside in the home that Plaintiff's husband and Judy Ghany Barounis paid for with hard work, but also because Defendant Barounis thinks nothing of claiming Judy Ghany Barounis as his "mother[2]" when it suits his needs of financial and personal gain that benefits his career advancement as her "legacy" and elicits sympathy due to her unfortunate 9/11 related death.

149.  Behind closed doors is a different story, apparently Judy Ghany Barounis (the woman who helped raise Defendant Barounis) is a "whore" and an "adulteress", but under the watchful public eye of 9/11 ceremonies, pecunairy gain and professional advancement Defendant Barounis will present and attest himself as the grieving "son" of Judy Ghany Barounis when it benefits his needs.

150.  And yet, despite their accusations of Plaintiff's husband and Judy Ghany Barounis having had an affair, Defendant Barounis and Defendant Viera in their hypocrisy and entitlement continue to reside in the home that the "adulterers" paid for as in their continuing tradition have never accomplished anything on their own.

151.  They will take and take and then disparage one behind their back with their ingratitude.  "Greed is good" is their mantra.  Such as the incessant obscene texts and postings, including ones about their father's genitalia.  All of which was done without shame and remorse as they continue to reside in a home which Plaintiff's husband worked two full time jobs to afford and provide.  And which by contrast, Defendant Viera does not work, and Defendant Barounis is employed by the NYPD and demands "legacy" treatment.

---

[2] Defendant Barounis' biological mother, Gail Gheris was married to Plaintiff's husband.  Judy Ghany Barounis was the second wife of Plaintiff's husband.

152. Other times when confronted with their dirty deeds Defendant Barounis, taking a cue from Defendant Viera's incessant manufactured illnesses in an effort to deflect and for sympathy will make claims of a pimple on his chest possibly being "cancer" knowing that it's a fear and trigger.

153. Furthermore, Defendant Barounis and Defendant Viera claimed to have received a text message regarding Defendant Viera sometime in 2023, for which they blame Plaintiff as the source.

154. Plaintiff has not communicated with Defendant Barounis and Defendant Viera in approximately three years and prefers to stay away from the "Toxic Duo" as one is a sociopath and the other is a narcissist but upon information and belief, the aforementioned text message was manufactured by Defendant Barounis and Defendant Viera or in the alternative it was a "set up" to look like the victims in anticipation of the onslaught personal attacks on Plaintiff they orchestrated in their attempts to harm Plaintiff.

155. Defendant Barounis made declarations of being able to trace said text message to New York County using NYPD departmental computers with his employment as a third-grade detective.

156. Plaintiff demanded to know as to how Defendant Barounis was able to trace allegedly third-party text messages whereas by contrast the NYPD and Suffolk County Police Department ("SCPD") were unable to trace a location or any information without serving informational subpoenas on various phone and app providers..

157. Plaintiff again demanded to know how Defendant Barounis was able to achieve the impossible with regards to the NYPD, SCPD, and investigators that Plaintiff works with were unable to do so. Presumably because the text message never existed or in the alternative they sent it to themselves.

158. There is a third alternative, which is that Defendant Barounis was lying, which wouldn't be unusual as his history and employment records reflect his lying to grand juries dictates and/or giving false testimony under oath.

159. The Center for Immigration studies states: *"Illegal immigrants are not "undocumented." They have fraudulent documents such as <u>counterfeit Social Security cards</u>, forged drivers licenses, fake*

*"green cards," and phony birth certificates. Experts suggest that approximately 75 percent of working-age illegal aliens use fraudulent Social Security cards to obtain employment."*

160.  On September 11, 2023, Plaintiff's husband told Defendant Barounis that Plaintiff felt so violated and exploited that she was now looking into Defendant Viera and her family.

161.  The reply was that Plaintiff would be looking at the wrong person.

162.  Plaintiff obtained TLO's (background investigation reports, TLO stands for "The Last One") on Defendant Viera.

163. From 2013-2018, Defendant Viera uses the hyphenated name Katherine Viera Ospina or Katherine Osina suggesting another possible marriage and bigamy.  Plaintiff is uncertain as to her real identity given her immigration status, numerous aliases and use of a counterfeit/fraudulent social security number which appears to be issued to an Emilio Martinez Hernandez in Pennsylvania.

164. A search on the New York Courts website along with e-courts show no divorce action.

165. Defendant Viera's social security number comes back to an Emilio Martinez Hernandez and the social security number was issued in Pennsylvania prior to even the birth of Defendant Viera (provided that she is telling the truth about her date of birth as almost everything she says is disingenuous) and her unlawful entry to the United States.  To the best of Plaintiff's knowledge, Defendant Viera has never resided in Pennsylvania.

166. Plaintiff showed her husband the TLO on Defendant Viera and both concluded that upon information and belief Defendant Viera's aversion to working stemmed from her laziness, love of taking advantage, but also due to the allegedly fraudulent social security number, Defendant Viera had to "stay under the radar" with jobs that do not do background checks, such as her brief stint in the dental office.

167. In sum and substance, the aforementioned and ongoing fraud speak to the ongoing fraud perpetrated by Defendant Viera and furthered by Defendant Barounis.

168. In 2019, Defendant Viera begins to use another name Katherine Barounis after her marriage to Defendant Barounis.

169.  Despite due diligence, Plaintiff is ignorant of Defendant Viera's true name and pleads, pursuant to CPLR § 1024, by designating so much of Defendant Viera's name as it is known to Plaintiff.

170.  Plaintiff turned the above referenced documentation to the NYPD, FBI, Suffolk County Police Department, United States Immigration and Customs Enforcement, and the Social Security Fraud Unit.

171.  On February 14, 2024, the NYPD transferred the criminal investigation to the Suffolk County Police Department as the information subpoenas evidenced that the wifi information used to send unlawful harassing texts to Plaintiff and her husband, along with the unlawful upload of Plaintiff's picture and both salacious and defamatory description of sexual acts and information originated from 9 Valleywood Court West Saint James, New York, where Defendant Barounis and Defendant Viera reside.

### XVIDEO IS DESIGNED TO VICTIMIZE THE VICTIM FURTHER and ALLOWED STOLEN IDENTITY CONTENT WITH THE INTENT TO HARM PLAINTIFF

172. Plaintiff repeats, re-alleges, and incorporates by reference each and every preceding allegation set forth herein.

173. Defendants XVideo conduct business as *Xvideos.com*, *Xvideosdaily.com*, and *Xvideostoday.net*, operate the Web sites, and derive direct financial benefit through advertising sales on the Web sites.

174.  Plaintiff is a private citizen and not a public figure.

175.  Upon information and belief, for a user to create an account on XVideo, a form is filled out and a link is sent to an email to "verify" the account.  It's that easy.  Anyone can pretend to be anyone or anything with stolen identity and without verification of authenticity of any kind, such as Defendant Viera and Defendant Barounis did with Plaintiff's likeness.

176.  Furthermore, upon information and belief, Defendant XVideo does not review the profiles whether lawfully or unlawfully uploaded and any and all private information can be exposed,

177.   Upon learning that Plaintiff's stolen identity and personal information was unlawfully uploaded allegedly by Defendant Viera and Defendant Viera, XVideo still refused to take action.

178.   Upon information and belief, Plaintiff's profile was uploaded to the XVideo platform in or about November 22, 2023, for a period of over ten (10) months, Plaintiff has expended considerable effort and expense which includes lost wages trying to reach out to Defendant's XVideo by filing complaints via the forms on their website.

179.  Defendant XVideo's platform is designed to fail, frustrate and delay as every time Plaintiff tried to file a complaint, Defendant XVideo's site gave Plaintiff an error message and stated that it did not recognize it's very own url link.

180.  Defendant WGCZ registered _Xvideos.com_ as an Internet Service Provider  and  designated  a DMCA[3]  Agent.  However,  Defendants  failed  to  honor  take-down  notices  as  required  and  fails  to implement a reasonable repeat infringer Policy.

181.   By virtue of the conduct alleged herein, Defendants have knowingly promoted, participated in, facilitated, assisted, enabled, materially contributed to, encouraged, and induced Plaintiff's harm via allowing Defendant Barounis and Defendant Viera to unlawfully use Plaintiff's stolen identity to harass and harm Plaintiff.

182.  By allowing Defendants Viera and Defendant Barounis to use Plaintiff's stolen identity, Defendants XVideo allowed Defendants Viera, Espinoza, GM and SM to carry out their illegal objectives as the profile, description and dissemination of Plaintiff's personal information was done with the sole intent to cause injury, harm, harass, embarrass, shame and humiliate Plaintiff with the graphic detail.

183. Additionally, Defendant's XVideo allowed Defendants Viera, Viera to violate its own user agreement posted on the site which reads in pertinent part:

- Threats of violence or wish for the serious physical harm, death, or disease of an individual or group of people, including threatening or promoting terrorism;

---
[3]

**5. Creation of an Account**

To access some of the resources offered through the Website, you may be asked to create a user login account. In connection with creating a user login account for the Website, you agree to

1. provide true, accurate, current, and complete information about yourself as prompted by the account registration form such information being the ("**Registration Data**"); and
2. maintain and promptly update the Registration Data to keep it true, accurate, current, and complete at all times while you are a registered user. You must promptly inform us of all changes, including, but not limited to, changes in your address and changes in your credit card, if any, used in connection with the Website. If you provide any information that is untrue, inaccurate, not current or incomplete, or we have reasonable grounds to suspect that such information is untrue, inaccurate, not current or incomplete, we reserve the right to suspend or terminate your user account and to refuse any and all current or future use of the Website.

As part of the registration process, you will select a unique user name and password which you must provide to gain access to the non-public portions of the Website. You represent and warrant that you will not disclose to any other person your unique user name and password and that you will not provide access to the Website to anyone who is below the age of majority in your jurisdiction. You are solely responsible for maintaining the confidentiality of your user name and password and are fully responsible for all activities that occur under your user name and password. To ensure the safety of your account, we will not release your password. You agree to

1. immediately notify us of any unauthorized use of your user name and password or any other breach of security; and
2. ensure that you exit from your account at the end of each session.

You are liable and responsible for any unauthorized use of the Website under your user account. If your account has been accessed without authorization you must submit documentation to substantiate                                                                                                                                             it. Unauthorized access to the Website is illegal and a breach of these Terms of Service. You may obtain access to your billing records regarding charges of your use of the Website upon request as may be required by law. You may be first required to provide information sufficient to confirm the applicable account belongs to you.

*7. User Submissions*

**A.** We allow our users to submit videos or other material and to share and publish such submissions for display in the free areas of the Website ("**Submissions**"). You shall be solely responsible for your Submissions (including those made through your account) and the consequences of posting or publishing them. In connection with your Submissions, you affirm and warrant that:

- you have the written consent, written release, and/or written permission of each and every identifiable person in the Submissions to use his or her name and/or likeness in the manner contemplated by these Terms of Service; AND
- no one in the Submissions is under the age of 18; AND

- your Submission is compliant with all laws, including, but not limited to, 18 U.S.C. § 2257 and 28 C.F.R Pt. 75; AND
- you are 18 years of age or older and retain all of your ownership rights in your Submissions, although by submitting the material to us, you grant us a worldwide, non-exclusive, royalty-free, sub-licenseable and transferable license to use, reproduce, modify, adapt, transmit, translate, distribute, promote, exhibit, prepare derivative works of, publicly display, and publicly perform the Submission. This license ends when your Submission is deleted from our systems; AND
- the posting of your Submissions on or through the Website does not, directly or indirectly, violate any laws prohibiting or otherwise depict child sexual abuse material or non-consensual sexual activity of any kind and does not, directly or indirectly, violate the legal rights of any person or entity, including without limitation any privacy or publicity rights, copyrights, trademark rights, trade secret rights or contractual rights; AND
- by posting your Submissions you allow us to share any content and any of your user related information with law enforcement authorities in connection with any investigation related to Child Sexual Abuse Material ("**CSAM**"), and/or any other non-consensual activity; AND
- to the extent permitted by applicable law, you will defend, indemnify, and hold harmless WebGroup, including our affiliates, officers, agents, and employees, from and against any and all claims, damages, judgments, awards, obligations, losses, liabilities, costs or debt, and expenses (including, but not limited to, attorneys' fees) arising from or related to: (i) your use of and access to the Website, (ii) your violation of these Terms of Service, (iii) your violation of any third-party right including, but not limited to, any copyright, property, publicity, or privacy right, (iv) any claim that your Submission caused damage to a third party, or (v) any claim that you engaged in reprehensible or culpable conduct. You acknowledge that you are solely responsible for any offensive, inappropriate, obscene, unlawful, unauthorized or otherwise objectionable content or information you upload and that we shall have no liability for such content or information. You agree that we shall have the sole right and obligation to control the legal defense against any such claims, demands, or litigation, including, but not limited to, the right to select counsel and to compromise or settle any such claims, demands, or litigation; AND
- if anyone brings a claim against us related to your actions, uploaded content, or any information obtained from or through you, and that claim is related to a fault, violation of these Terms of Service, or any other reprehensible or culpable behavior on your part, or is intended to remedy the consequences of any such fault, violation or behavior, you will indemnify and hold us including our affiliates, officers, agents, and employees harmless from any such claim, including for any and all liability or expense arising from claims, losses, damages, suits, judgments, litigation costs and attorneys' fees. You acknowledge that you are solely responsible for any offensive, inappropriate, obscene, unlawful, unauthorized or otherwise objectionable content or information you upload and that we shall have no liability for such content or information; AND
- you have paid or shall pay any and all residuals, reuse and other fees, compensation or payments of any kind, however denominated, which are due or may become due in relation with your Submissions.

**B.** Content on the Website is provided to you AS IS for your information and personal and non-commercial use only. You further agree that **you will not**:

- submit material that depicts any person under 18 years of age** (or the age of majority under the laws of your state or jurisdiction where the age of majority is set above 18), whether real or simulated; NOR
- submit material without written documentation confirming that all subjects depicted are, in fact, over 18 years of age (or the age of majority under the laws of your state or jurisdiction where the age of majority is set above 18**)**; NOR
- submit material depicting child sexual abuse, non-consensual sexual acts, rape, bestiality, death, or use of controlled substances, whether implied, staged, simulated, artificial or cartoon/drawn/art; NOR
- submit material that is copyrighted, protected by trade secret or otherwise subject **to third party proprietary rights, including privacy and publicity rights, unless you are the owner of such rights or have permission from their rightful owner to post the material and to grant WebGroup all of the license rights granted herein[4];** NOR
- allow any third party, whether or not for your benefit, to reproduce, use, copy, modify, adapt, translate, create derivative works from, display, perform, publish, post, distribute, sell, license, upload, transmit, disseminate, broadcast or circulate to any third party including, without limitation, on or via a third-party website or otherwise exploit, any content, including member Submissions, without our express prior written consent; NOR
- publish falsehoods or misrepresentations that could damage WebGroup or any third party; NOR
- submit material that is unlawful, threatening, harassing or hateful, constitutes "revenge porn", contains incitement to violence or hatred directed against a group of persons or a member of a group on the grounds of sex, race, colour, ethnic or social origin, genetic features, nationality, language, religion or belief, political or other opinion, membership of a national minority, property, birth, birthplace, disability, age or sexual orientation or encourages, depicts or constitutes conduct that is a criminal offense, gives rise to civil liability, violates any law, or is otherwise inappropriate; NOR
- submit material depicting violence or abuse actual harm to another living thing, including animals; and submit material that depicts or promotes incest; NOR
- submit material that depicts or promotes coprophilia, also known as "fecophilia" or "scat"; and use any computerized or automatic mechanism, including without limitation, any web scraper, offline reader, spider or robot, to access, extract or download any content from the Website, unless you are expressly authorized in writing to do so by us; NOR
- use or launch any automated system that accesses the Website in a manner that sends more request messages to our servers in a given period of time than a person can reasonably create in the same period by using a conventional on-line web browser; NOR
- collect or harvest any personally identifiable information, including account names, from the Website; NOR
- solicit, for commercial purposes, any users of the Website with respect to their Submissions; NOR
- post any form of advertisement, commercial communication or solicitations of business (including advertisements and/or hyperlinks to third-party websites embedded or otherwise contained in a Submission); NOR
- <u>impersonate another person.</u>

---

[4] Plaintiff's image was used unlawfully from a Meta profile picture.

184.  Should XVideo decide to sue Defendant Viera and Defendant Barounis third-party, Plaintiff would cooperate.

DEFENDANTS VIOLATE THE CONSOLIDATED APPROPRIATIONS ACT, 2022

185. Plaintiff repeats, re-alleges, and incorporates by reference each and every preceding allegation set forth herein.

186. On March 15, 2022, Congress authorized a federal civil claim relating to the disclosure of intimate images as part of the Consolidated Appropriations Act, 2022. The new cause of action, which takes effect on October 1, 2022, marks the first federal law targeting the unauthorized dissemination of private, intimate images of both adults and children—images commonly referred to as "nonconsensual pornography" or "revenge porn."[5]

187. Nearly all 50 states (plus the District of Columbia, Puerto Rico, and Guam) have a nonconsensual pornography law in some form. The majority of states make dissemination of nonconsensual pornography a criminal offense if the defendant acted with a specific intent (e.g., to harass or intimidate) or with some level of knowledge—either actual or imputed through recklessness or negligence—that the depicted person had not consented to the disclosure.

188. Some states, including New York, Pennsylvania, and Washington, also authorize the depicted person to bring a civil action in state court against an individual who disseminated the material (also limited by the requisite mental state). Such actions may authorize the court to award injunctive relief or monetary damages. Most of these state laws were adopted within the past 10 years.

---

[5] Source of crsreports.congress.gov LSB10723

189.  Congress created a new, private right of action for victims of nonconsensual pornography in Section 1309 of the Violence Against Women Act Reauthorization Act of 2022, passed as part of the Consolidated Appropriations Act, 2022.

Congress enacted a federal civil cause of action for nonconsensual pornography when it re-enacted the Violence Against Women Act, *which went into effect in 2022.* Section 1309 provides a civil cause of action for "an individual whose intimate visual depiction is disclosed, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce, without the consent of the individual, where such disclosure was made by a person who knows that, or recklessly disregards whether, the individual has not consented to such disclosure."

YORK STATE CIVIL RIGHTS Law §52-b AND DEFAMATION/LIBEL/SLANDER

190. Plaintiff repeats, re-alleges, and incorporates by reference each and every preceding allegation set forth herein.

191.  Plaintiff alleges that Defendant's Barounis not only made the following defamatory and salacious disclosures  on the XVideo's site via identity theft, but, additionally Defendants Viera and Defendant Barounis made said disclosures with the knowledge that not only did they not have Plaintiff's consent in all matters (let alone the disgusting  and harmful lies with the intent to harm) for disclosure, they did so with reckless disregard and willful negligence consciously and intentionally disregarding the substantial risk and harm to Plaintiff.

192.  Defendants intentionally, knowingly, negligently, or through willful blindness avoided reasonable precautions to deter rampant and willful criminal activities along with the violation of Plaintiff's civil liberties.

193.  Defendant's Viera and Barounis both legal and moral compass could be a hindrance and deterrent to obtaining citizenship as these actions violate the moral turpitude and allegedly using stolen/counterfeit social security numbers and committing bigamy.

194.  For ten months, Plaintiff was inundated with sexually explicit images, requests and detailed messages

from strangers.

195.   Upon information and belief, Defendant Barounis and Defendant Viera falsely impersonating Plaintiff solicited strangers on the internet and via the XVideo site to cause harm to Plaintiff.

196.   On numerous occasions, due to Plaintiff's mental anguish of receipt of graphic messages and images, Plaintiff left New York and the country, seeking a release from the emotional stress of Plaintiff's images and both explicit and fraudulent dissemination of sexual acts and innuendos with people online.

197.   Defendant Barounis and Defendant Viera engaged in the intentional, extreme and outrageous conduct in the dissemination of Plaintiff's images, personal information and fraudulent impersonation of her.

198.   Defendant Barounis and Defendant Viera's conduct was so extreme in degree and so outrageous that it goes beyond the bounds of decency.

199.   Defendant Barounis and Defendant Viera's conduct was to both harass and embarrass Plaintiff and to cause others to view Plaintiff in sexual positions and content.

200.   Defendant Barounis and Defendant Viera's knowingly and intentionally intended to cause severe emotional distress and recklessly disregarded the likelihood that such conduct would cause Plaintiff severe emotional distress.  Such outrageous conduct and behavior is beyond the limits of decency and intolerable in a civilized society.

201.   As a direct and proximate result of Defendant Viera and Defendant Barounis's conduct, Plaintiff suffered severe emotional distress.

202.   Defendant Barounis and Defendant Viera's acted with the intent to cause severe emotional distress and disregarded the substantial probability that their actions would cause severe emotional distress.

203.   Defendant Barounis and Defendant Viera's actions were so egregious and were done with both malice and reckless indifference to the perceived risk that their actions would harm Plaintiff's reputation, mental and physical well-being and her marriage.

204.   In fact, all the damages that Defendant Barounis and Defendant Viera inflicted upon Plaintiff are in addition to the measure of relief that Plaintiff may be entitled herein.

205.  Defendant Barounis and Defendant Viera should be required to pay punitive damages to punish them for their reckless disregard and conduct in the further amount that the jurisdictional limit of all lower courts to be determined by a trier of fact, and in order to deter Defendant Barounis and Defendant Viera and others similarly situation from engaging in such conduct going forward.  Especially Defendant Barounis who is paid to uphold the law, not break it.

206.  Plaintiff demands judgment against Defendant Barounis and Defendant Viera in an amount to be determined upon the trial of this action with said amount being sufficient to compensate Plaintiff for her severe injuries as well as an amount sufficient to punish Defendant Barounis and Defendant Viera for their wanton, willful,  unlawful and reckless conduct together with interest, legal fees, costs and disbursements in this action; and said amount exceeding jurisdictional limits in the lower courts which would otherwise have jurisdiction;

VIOLATIONS OF NEW YORK CITY ADMINISTRATIVE CODE §10-177 AND
DEFAMATION AGAINST DEFENDANT BAROUNIS AND DEFENDANT VIERA

207.  Plaintiff repeats, re-alleges, and incorporates by reference each and every preceding allegation set forth herein.

208.  On September 11, 2023, after, Plaintiff received a screenshot of the fraudulent and illegal upload of her image and information online to the XVideo site, along with graphic images of male genitalia.

209.  Defendant Viera and Defendant Barounis disclosed Plaintiff's intimate images and content without her consent and had knowledge of falsity with the dissemination of the disgusting and vile information of Plaintiff and her husband.

210.  Defendant Viera and Defendant Barounis' intention for disclosing the intimate images and content was to cause Plaintiff substantial emotional and economic harm.

211.  Plaintiff was readily identifiable in the intimate images which display her face, but also contain images of her social media pages (i.e. Facebook, Instagram), along with her contact information.

212.  The criminal state code provides for civil remedies which includes a) compensatory and punitive

damages, b) injunctive and declaratory relief, c) attorneys' fees and costs and d) such other relief as a court may deem appropriate.

213. As a result of Defendant's actions, Plaintiff demands judgment for damages which exceed the jurisdictional limits of all lower courts which would have otherwise jurisdiction of this matter, together with damages for pain and suffering and punitive damages, legal feels, costs of this litigation, injunctive relief preventing Defendant Barounis and Defendant Viera from disseminating images and as and for such other relief that this Court deems equitable and just.

CRIMINAL IMPERSONATION AND REVENGE PORN AND FALSE ADVERTISING

214. Plaintiff repeats, re-alleges, and incorporates by reference each and every preceding allegation set forth herein.

215. Upon information and belief, Defendant Viera and Defendant Barounis altered pictures of Plaintiff to them to make them sexually explicit and then posting them on a porn website (XVideo) for approximately ten months.

216. Upon information and belief, Defendant Viera and Defendant Barounis also unlawfully shared the Plaintiff's personal identifying information, including full names, phone numbers and addresses -- and encouraged other users on the XVideo porn site to harass and threaten Plaintiff with violence/sexual assault.

217. Upon information and belief, Plaintiff's photos were taken were taken from her social media profiles, re-posted on the XVideo website by Defendant Barounis and Defendant Viera and altered to suggest that Plaintiff was engaging in sexual conduct.

218. The images had been altered in what is otherwise known as a "deepfake," a technology whereby Defendant Viera and Defendant Barounis convincingly superimposed the victims' faces on other, separate images of women engaging in sexual conduct. Those posted images were accompanied by Plaintiff's full name, addresses and phone numbers, among other identifying information.

219. Upon information and belief, Defendant Barounis and Defendant Viera then "chatted" and solicited sexual favors under the guise and pretenses that they were Plaintiff.

220.  Administrative Code §10-180[b][1] creates both criminal and civil remedies for a victim of what is colloquially referred to as "revenge porn". As is relevant here, it provides as follows:

"It is unlawful for a *covered recipient* to disclose an intimate image, without the depicted individual's consent, with the intent to cause economic, physical or substantial emotional harm to such depicted individual, where such depicted individual is or would be identifiable to another individual either from the intimate image or from the circumstances under which such image is disclosed."

221.  Section 242 of 18 U.S.C. makes it a federal crime, under color of any law, statute, ordinance, regulation, or custom to willfully subject any person to the deprivation of any rights, privileges or immunities secured by the Constitution or laws of the United States or to different punishment, pains, or penalties, on account of such person being an alien, or by reason of his color or race than any prescribed for the punishment of citizens.

222.  Defendant Viera and Defendant Barounis' unlawful conduct are the direct and proximate cause of Plaintiff's harm and will continue to cause Plaintiff imminent, irreparable injuries for which there are no adequate legal remedies. Accordingly, in addition to monetary damages, Plaintiff is entitled to permanent injunctive relief.

## AGEISM DISCRIMINATION, DEFAMATION AND RETALIATION

223.   Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

224.  The unlawful XVideo profile of Plaintiff not only states that Plaintiff is approximately two decades older, and that Plaintiff is into "granny sex[6]".  All of which is untrue and specifically intended to bring humiliation, embarrassment, shame and harm to Plaintiff.

225.  Additionally, Defendant Barounis and Defendant Viera systematically targeted Plaintiff to attack her self-worth because Defendant Barounis' biological mother was significantly older than Plaintiff's husband and routinely abandoned him at a young age to pursue extramarital affairs, which left deep

---

[6] Plaintiff does not even know what "granny sex" is but was clearly targeted by Defendant's Viera and Defendant Barounis due to her age.

rooted psychological scars and hatred for anyone who had the misfortune to be thrust into a maternal role (whether real or perceived).

226.  These actions also violate the Age Discrimination Act of 1975 and are hate crimes.

227.  Defendant Viera and Defendant Barounis' unlawful conduct are the direct and proximate cause of Plaintiff's harm.

### NATIONAL ORIGIN, GENDER and RELIGIOUS DISCRIMINATION, DEFAMATION AND RETALIATION

228.   Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

229.  Plaintiff is an Asian Turkish female.

230. The unlawful XVideo profile of Plaintiff beginning statement is that Plaintiff is a female from Turkey and states that because of this and historical background Plaintiff likes to have sex with men that are young and old.

231. Plaintiff is an Asian Muslim female but also practices many beliefs such as Catholicism, Judaism, Wiccan and HooDoo beliefs, which the unlawful profile alludes to with psychic powers.   All of which Plaintiff was targeted and discriminated against by Defendant Barounis and Defendant Viera.

232. Additionally, the July 7, 2023 harassing text message attacks Plaintiff's  religious "witch" belief system which Plaintiff was the target of Defendant Viera and Defendant Barounis onslaught of harassment, which threatens Plaintiff with physical harm.

233. Plaintiff was targeted and discriminated against for her religious beliefs by Defendant Viera and Defendant Barounis.  These criminal actions by Defendant Viera and Defendant Barounis are hate crimes.

234. Other texts received by Plaintiff by Defendant Barounis and Defendant Viera, repeatedly call Plaintiff a "whore", simply because Plaintiff is female, despite the fact that both, upon information and belief, regularly engage in sexual activities with others outside of their marriage.

235.  All of which was targeted to specifically intended to bring humiliation, embarrassment, shame and harm to Plaintiff.

236.  Defendant Viera and Defendant Barounis' unlawful conduct are the direct and proximate cause of Plaintiff's harm.

TORTUROUS INTERFERENCE BY DEFENDANT VIERA AND DEFENDANT BAROUNIS

237.  Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

238.  The unlawful, defamatory and salacious illegal upload of the profile of Plaintiff on XVideo, along with the criminal impersonation of Plaintiff details defamatory and obscene untrue statements of Plaintiff's husband (Defendant Barounis' father and Defendant Viera's father-in-law).  Not only are these disgustingly incestuous statements unfounded and untrue and go beyond the moral bounds of decency but these untrue statements were designed to not only impugn the character of both Plaintiff and her husband, but they were also intentionally set forth to torturously interfere in Plaintiff's marriage.

239.  The lies about Plaintiff's sexual activities were also designed to torturously interfere in Plaintiff's marriage and to bring problems that would ultimately result in a divorce action.

240.  Additionally, the onslaught of harassing text messages to Plaintiff and her husband riddled with untrue statements were willfully and wantonly designed to tortuously interfere in Plaintiff's marriage and to bring physical, emotional and economic harm.

241. Plaintiff has already detailed the physical, emotional, financial and medical harm that Defendant Viera and Defendant Barounis have subjected Plaintiff and her spouse to.

242.  Defendant Viera and Defendant Barounis' disgusting unlawful conduct are the direct and proximate cause of Plaintiff's harm.

CRIMINAL IMPERSONATION and FALSE ADVERTISING AGAINST DEFENDANTS
XVIDEO AND JOHN AND JANE DOES 1-50

243.  Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

244. Defendants XVideo and John Does 1-50 (some of whom Plaintiff believes might be Gaudencio

Viera, Karen Espinoza and Sandra Milla et al) using XVideo's platform, disclosed Plaintiff's intimate images and personal information without her consent or knowledge.

245. Defendants XVideo and John Does 1-50 intention for disclosing the unlawful images and information was to cause Plaintiff substantial harm both physical and emotional, along with causing her economic harm.

246. Upon information and belief, in order to create an XVideo account, one has to send/email XVideo an intimate detail in true form of one engaging in sexual activities.

247. XVideo and John Does 1-50  allowed Plaintiff's unlawful profile and account to be created.

248. Plaintiff was readily identifiable in the images and videos which not only display Plaintiff's face, but also contain images of her social media, business information and personal information such as her phone number.  XVideo and John Does 1-50 combined these images onto an XVideo profile "Ilovetos███████nyc".

249. As a result, Defendants XVideo and John Does  1-50's actions, Plaintiff demands judgment for damages which exceed jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter, together with damages for pain, suffering and punitive damages, legal fees, costs of this litigation, injunctive relief preventing Defendants XVideo, Barounis, Viera and John Does 1-50 from disseminating Plaintiff's images and information, and such other relief at the Court deems equitable and just.

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANTS XVIDEO AND JOHN AND JANE DOES 1-50

250.  Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

251.  Defendants XVideo and John Does 1-50 engaged in the intentional, outrageous, extreme and salacious conduct of possessing and disseminating Plaintiff's photographs and personal information.

252.  Defendants XVideo and John Does 1-50 targeted, exploited and sexually objectified Plaintiff for their personal gain to the detriment and harm of Plaintiff.

253.  Defendants XVideo and John Does 1-50 conduct was so extreme, salacious and outrageous in character that it goes beyond all bounds of decency.

254.  Defendants XVideo and John Does 1-50 sole purpose in sharing the images and Plaintiff's personal information was to both harass and embarrass Plaintiff to be viewed in a sexual position and to exploit her sexually without her knowledge or permission.

255.  Defendants XVideo and John Does 1-50 intended to cause severe emotional distress and recklessly disregard Plaintiff's emotional and physical well-being and that such conduct would cause severe emotional distress. Such outrageous conduct and behavior is beyond the limits of decency and is not tolerable in a civilized society.

256.  As a direct and proximate result of Defendants XVideo and John Does 1-50 conduct and behavior, Plaintiff suffered emotional distress.

257.  Defendants XVideo and John Does 1-50 acted with the intent to cause severe emotional distress, and/or disregarded the substantial probability that their actions would cause severe emotional distress.

258.  The acts of Defendants XVideo and John Does 1-50 were so egregious and done with malice and reckless disregard/indifference in the fact of perceived risk that their actions would harm Plaintiff's reputation, physical and emotional well-being, that in addition to all the damages inflicted upon Plaintiff along with the measure of relief to which Plaintiff may be entitled to herein, Defendants XVideo and John Does 1-50 should also be required to pay punitive damages for their reckless misconduct in the further amount greater than the jurisdictional limit of all lower courts to be determined by a trier of fact in order to deter them and others similarly situated from engaging in such conduct in the future.

259. Plaintiff demands judgment against Defendants XVideo and John Does 1-50 in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as to punish Defendants XVideo and John Does 1-50 for their willful, wanton, reckless and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with interest, legal

fees, costs and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## VIOLATIONS OF CIVIL RIGHTS LAW SECTION 52-B and 52C

260.      Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

261.      Plaintiff also alleges that defendants violated Civil Rights Law Section 52-b which states that a person can if sue another person for disseminating or publishing a photograph or video without their consent that contains nudity or a sexual act without their consent or threatening to disseminate or to publish a photograph or video that contains nudity or a sexual act.

262.      Plaintiff also alleges that defendants violations Civil Rights Law Section 42-C which states that a person can also sue for Deepfake Porn under Civil Rights Law Section 52-c, the Private Right of Action for Unlawful Dissemination or Publication of a Sexually Explicit Depiction of an Individual.

263.      Plaintiff's direct and proximate harm was caused by the actions of Defendant Barounis, Defendant Viera and XVideo for the uploads and profile of Plaintiff without her knowledge or consent.

## THE NYPD/CITY OF NEW YORK ARE RESPONSIBLE FOR THE ACTIONS OF THEIR EMPLOYEE DETECTIVE STEPHEN G. BAROUNIS ALONG WITH VIOLATIONS OF 42 U.S.C.

264.  Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

265.  By the actions described herein, Defendant Barounis, acting individually and in concert with Defendant Viera engaged in extreme and outrageous conduct, conduct utterly intolerable in a civilized community, which negligently caused severe emotional distress to plaintiff. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated plaintiff's civil statutory and common law rights as guaranteed plaintiff by the laws and Constitution of the State of New York and Constitution of the United States.

266.  The City of New York and its employee (Defendant Barounis), servant and/or agents acting within the scope of his employment did negligently hire, retain, train and supervise Defendant Barounis, who is and was unfit for the performance of police duties.

267.  Defendant Barounis' angry outbursts and abuses of power are well known to the NYPD and City of New York.

268. As a result of the foregoing, Plaintiff was deprived of liberty and sustained great injuries and substantial harm.

269.  The City/NYPD, as the employer of  is responsible for Defendant Barounis' wrongdoing under the doctrine of *respondeat superior*.

270.  Section 14141 of 42 U.S.C. provides in subsection (a) that it shall be unlawful for any government authority or agent to engage in a pattern or practice of conduct by law enforcement officials with responsibility for the administration of juvenile justice that deprives persons of rights secured by the Constitution or laws of the United States.

## CLOSING STATEMENT

Defendants are all culpable in this smear campaign to humiliate and embarrass Plaintiff while putting her in harms way.   This is merely another form of domestic terrorism to keep Plaintiff in harms way and rooted in fear.

Plaintiff has been routinely threatened, stalked, and tormented via the actions of the defendants. Plaintiff will not allow her self-worth to be negotiated by the pathological perversions of the defendants via their conscious bias, harassment, salacious, defamatory and indecent and exploitation.

**WHEREFORE**, Plaintiff demands judgment against Defendants Barounis, Viera, XVideo, Stephane and Malorie Pacaud and John/Jane Does 1-50 on all causes of action in the sum of the amount greater than the jurisdictional limit of all lower courts to be determined by the trier of fact, plus punitive damages, the costs of this action, pre-judgment interest and reasonable legal fees as permitted under the law, together with such other and further relief as the Court may deem just and proper.

Dated: New York, New York
    May 28, 2024,

Aylin Gaughan
Plaintiff, *Pro Se*
160 Manhattan Avenue – 6A
New York, New York 10065
Ph: (646) 957-2062
Email: ag10021@gmail.com